UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

VICKY A. SCHNEIDER,

    Plaintiff,

-vs-                                                    Case No: 24-CV-49

CITY OF SHEBOYGAN,

    Defendant.

## AMENDED COMPLAINT

### I.    NATURE OF ACTION

Vicky Schneider brings this civil action under Title VII against the City of Sheboygan in order to obtain damages and other appropriate relief for unlawful discrimination and retaliation committed against her during her employment, in violation of the rights secured to her by these laws.

### II.    JURISDICTION AND VENUE

1.    The court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction). The Eastern District of Wisconsin is the proper venue for this action under 42 U.S.C. § 1391 (b) (2) because the Plaintiff's claims arose within the geographical boundaries of the Eastern District of Wisconsin.

### III. PARTIES

2. The plaintiff, Vicky A. Schneider, is an adult resident of the State of Wisconsin who resides in the City of Sheboygan.

3. The defendant City of Sheboygan ("Sheboygan") is a Wisconsin unit of local government, with a principal address of 828 Center Avenue, #204, Sheboygan, Wisconsin 53081 with the capacity to sue and be sued in this Court.

### IV. FACTUAL ALLEGATIONS

4. In March 2019, plaintiff was hired to work as the Director of Senior Services for Sheboygan. In March 2020, plaintiff became the acting Human Resources Director and then in May 2020, she was officially promoted to Human Resources Director, a promotion that Todd Wolf, as the then-President of the Sheboygan Common Council, approved.

5. In July 2020, Sheboygan hired Wolf as its City Administrator. Throughout the duration of her employment as the Human Resources Director, plaintiff was under the direct supervision of Wolf.

6. Throughout the rest of 2020 and 2021, plaintiff met or exceeded all reasonable expectations of her performance and received consistent praise from Wolf for her work.

7. On approximately July 7, 2021, plaintiff conducted the exit interview of a female City of Sheboygan police officer who had resigned sometime after bringing forward a complaint of sexual harassment involving fellow officers.

2

8. Plaintiff was aware of the female officer's complaint, having heard from the City of Sheboygan Police Department that it involved allegations that nude photographs had been shared. Plaintiff also knew that the male officers involved in the complaint had received short suspensions.

9. During the female officer's exit interview, plaintiff learned that the allegations included far more lewd and extensive allegations of sexual misconduct and abuse than what had been reported to her by the City of Sheboygan Police Department.

10. Upon learning the severity of the allegations against the male police officers, plaintiff expressed her concern that the sexual misconduct by the male officers was not being taken seriously by the police department or the City, as evidenced by the light discipline handed out to the male officers while the female officers continued to be mistreated to the point where one resigned her law enforcement career.

11. On or about July 8, 2021, Sheboygan began the process of submitting the complaint to its insurer and soliciting an outside investigation to be conducted.

12. Wolf assigned plaintiff to be Sheboygan's contact to work with the outside attorney investigator. Her responsibilities were to assist and facilitate meetings, conference calls and other communications between and with the attorney investigator, Sheboygan's insurer, Wolf, Sheboygan's Mayor (Ryan

3

Sorenson), and Sheboygan's City Attorney (Charles Adams). Plaintiff abided by these instructions and was in full agreement with the plan.

13. As more details were gathered during the course of the investigation, plaintiff again expressed her concern over the level of discipline that had been given to the male officers for their conduct, stating that it sent a message that female employees had no legitimate protection against this kind of behavior from their male co-workers. Indeed, during the fall of 2020 and early 2021, four female officers resigned.

14. In response to these concerns, Wolf admonished plaintiff to "stay in (her) lane" and told her that he did not want this situation to "taint" her and the work she was doing for Sheboygan. He also explicitly instructed her to not inform Sheboygan's Common Council about the complaint or its allegations and otherwise downplayed the significance of and her concerns about the behavior involved.

15. Plaintiff received these instructions from Wolf, her supervisor, as a threat to her job security and reputation.

16. On September 18, 2021, after receiving a nearly 200 page report from the outside attorney investigator, a meeting occurred between plaintiff, Wolf, Mayor Sorenson, and City Attorney Adams. During that meeting, plaintiff expressed her concerns about the breadth of the allegations and the pattern of discrimination and sexual mistreatment occurring within the City's police department. Among the topics she questioned during the meeting included:

- That her review of the documents she received indicated a pattern of severe sexual harassment;
- That there was non-consensual sharing of nude photos of female officers during work;
- That the discipline was meager in scope (only a few officers were disciplined) and duration (only brief suspensions):
- That four female officers had resigned entirely from the police profession as a result of what occurred;
- That there is a profound lack of curiosity from the City and the police department about a potentially very serious allegation involving a female police officer that occurred during a police department sponsored training.

17. In the months that followed, plaintiff was retaliated against and ostracized by Wolf. The retaliatory actions committed by him include at least the following:

- Reduction of her staff from three human resources generalists to two;
- Relocation of the human resources department to the second floor storage room at City Hall without input from or notice to plaintiff;
- An Assistant City Attorney warned plaintiff that the Wolf was actively marginalizing her;
- Consistent interference, criticism, and shaming of plaintiff and the Human Resources department by Wolf's assistant, who was instructed by Wolf to behave in this manner towards plaintiff;
- Disparaging plaintiff to other City officials, including telling an Alderperson that plaintiff was "obsessing" about the sexual harassment case, but that the City would be "closing the book on the case soon;"
- On October 4, 2021, Mayor Sorenson warned plaintiff that Wolf had her "under the microscope" because of her concerns about the sexual harassment case and that Wolf was using other Human Resources employees to spy on her;
- On October 6, 2021, Mayor Sorenson confessed to plaintiff that Wolf had been "gaslighting" and "gatekeeping" her, that Wolf has kept her out of meetings and communications, and that Wolf disparaged her to council leadership that she was obsessive about the sexual harassment complaint;

5

- In early October, a newly hired human resources generalist confided to plaintiff that another human resources generalist had been directed by Wolf to spy on plaintiff and report back to him;
- Mayor Sorenson confirmed that at least two employees who were subordinates to plaintiff had been solicited by Wolf to monitor and report to him about her;
- During a meeting on November 8, 2021, Mayor Sorenson told plaintiff that Wolf had placed a target on her back and that he had her staff involved and against her and that she should "probably never meet with him alone anymore;"
- On November 11, 2021, plaintiff met with Wolf, who admitted that he was using her staff to actively marginalize and work against her, at one point suggesting that the deterioration of their relationship was because of the "police thing."

18. As a result of the cumulative adverse effect on plaintiff of Wolf's treatment and the retaliation she endured expressing her concerns, plaintiff's physician determined her to be too emotionally and physically damaged to resume her work and she began an approved Family Medical Leave Act ("FMLA") leave in November 2021.

19. Plaintiff remained on FMLA leave until late it exhausted in March 2022. At that point, she remained on leave without pay, due to her health condition, pursuant to Sheboygan policy.

20. On May 12, 2022, Wolf notified plaintiff in writing that her leave without pay would be exhausted on May 31, 2022 and that an update from her medical provider was needed in order for Sheboygan to "evaluate if any further leave can be accommodated to the degree any further leave is requested and/or needed."

21. Because no significant change to her employment situation or reporting structure was offered or implemented by Sheboygan that would have allowed her to return to work safely without Wolf's interference and ongoing retaliation, plaintiff had no reasonable alternative other than to resign her employment on May 31, 2022 to be effective on June 3, 2022.

22. Her resignation was a constructive discharge.

23. Sheboygan failed completely to take any preventive or corrective measures, despite multiple opportunities to do so. Rather than take plaintiff's complaints seriously and make any effort to remedy her situation and prevent further mistreatment from Wolf, Sheboygan did nothing except approve her medical leave until she was forced to resign.

24. Wolf's supervision of and interaction with Sheboygan employees, including plaintiff, was part of his job as the City Administrator; his harassment of and retaliation against plaintiff was only made possible by virtue of his status as the City Administrator.

25. Plaintiff has properly met all administrative and procedural prerequisites for filing this action, and files this action within 90 days of her receipt of a notice of her right to sue from the Department of Justice Civil Rights Division dated November 9, 2023.

## V. CAUSE OF ACTION

26. For a first cause of action against defendant Sheboygan under Title VII, plaintiff realleges each of the preceding paragraphs as though set forth herein.

27. Through the unlawful conduct described in the preceding paragraphs, including but not limited to the continuing pattern of retaliation plaintiff endured after engaging in protected activity by complaining about sexual discrimination and sexual harassment, acquiescing in, condoning, and failing to properly remedy and prevent harassment and retaliation against plaintiff by her ultimate supervisor, Sheboygan retaliated against plaintiff in violation of her rights under Title VII.

28. Sheboygan's conduct as described above caused plaintiff substantial injuries and damages including but not necessarily limited to wage and benefit loss, loss of earning capacity, severe emotional distress, loss of reputation and humiliation and embarrassment. Plaintiff will continue to suffer these injuries and damages in the future.

## VI. JURY DEMAND & PRAYER FOR RELIEF

The plaintiff demands that the issues in the above-captioned matter be tried by a jury of twelve persons.

WHEREFORE, the plaintiff demands judgment as follows:

a. Back wages and benefits;

b. Front pay and benefits;

c. Loss of earning capacity;

d. Compensatory damages in an amount to be determined;

e. An order finding that the defendant violated plaintiff's rights under Title VII;

f. Reasonable attorney fees and costs incurred in bringing this action as well as reasonable fees and costs incurred during the administrative proceedings before the Equal Rights Division; and

g. Such other relief as the Court may deem just and proper.

Dated at Monona, Wisconsin this 17th day of January 2024.

Respectfully submitted:

Vicky A. Schneider,

Plaintiff,

By

FOX & FOX, S.C.

ATTORNEYS FOR PLAINTIFF

/s/ Peter J. Fox
SBN: 1037925
124 W. Broadway
Monona, WI 53716
T: 608/258-9588
F: 608/258-9105
pfox@foxquick.com